### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| **Walter McGahey**, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No.   2:16-cv-00219-JDL |
| | ) |
| **Federal National Mortgage Association** | ) |
| | ) |
| **PHH Mortgage Corporation,** | ) |
| | ) |
| Defendants | ) |
| | ) |

### PLAINTIFF'S OBJECTION TO DEFENDANTS' RENEWED MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

The Plaintiff, Walter McGahey ("Mr. McGahey") Objects to the Renewed Motion to Dismiss and Incorporated Memorandum of Law ( "MTD") filed by Defendants Federal National Mortgage Association ("Fannie Mae") and PHH Mortgage Corporation ("PHH") (referred to collectively as the "Defendants"). In support of his Objection, the Plaintiff states the following:

## I.       INTRODUCTION

As alleged in the Amended Complaint ("Am. Compl"), Mr. McGahey has been trying for five years to have PHH, as servicer for Fannie Mae, review him for a Fannie Mae Making Home Affordable ("HAMP") loan modification that would reduce his monthly mortgage payment to about 31% of his monthly income. PHH and Fannie Mae have refused to evaluate Mr. McGahey for a Fannie Mae HAMP modification providing first that he was not eligible because he failed a HAMP modification and now claiming he is not eligible because he failed a HAMP Trial Period Plan. Neither reason is accurate and PHH and Fannie Mae's continued misrepresentations regarding his ineligibility for HAMP has caused Mr. McGahey to enter into unaffordable, unsustainable modifications of his loan that set him up to fail. Mr. McGahey did successfully complete a HAMP TPP in 2009 but because of his changed income, was then offered a permanent Fannie Mae Standard Modification. He was subsequently denied eligibility for a HAMP in 2012 based on the misleading allegation that he failed a HAMP modification. Had PHH evaluated Mr. McGahey for a HAMP TPP in 2012, he would have been found eligible and PHH would have had to offer him the modification per the Fannie Mae guidelines. This would have avoided a foreclosure being brought against Mr. McGahey and would have avoided Mr. McGahey having to pay PHH's attorneys' fees along with fees on his loan and interest on interest on subsequent non-HAMP modifications. PHH and even Fannie Mae continued to misrepresent Mr. McGahey's eligibility for HAMP, even after he sent several Qualified Written Requests and Notices of Error

to correct the issue. Such conduct was unfair and deceptive as it misled Mr. McGahey to believe he was not eligible for a HAMP modification and to enter into unaffordable modifications instead of pursuing a HAMP. Based on these facts and others alleged in the Amended Complaint, PHH and Fannie Mae (I) violated the Unfair Trade Practices Act ("UTPA") 5 M.R.S.A. § 205-A *et seq.*, (II) violated the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605 *et seq.*, (III) engaged in Fraud, and (IV) Violated 9-A M.R.S. § 9-401 of the Maine Consumer Credit Code (MCCC): Misrepresentation.

## II.     STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need only "provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Courts evaluating Fed. R. Civ. P. 12(b)(6) motions to dismiss must "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008). All four (4) of the Plaintiff's Counts against Defendants, for (I) Violation of UTPA (II) Violation of RESPA; (III) Fraud, and (IV) Violation of MCCC: Misrepresentation provide Defendants with fair notice and state plausible legal claims. The well-pleaded facts in the Plaintiff's First Amended Complaint (the "Amended Complaint" or "Am. Compl.") are sufficient to support each of his Counts against Defendants and therefore the Motion to Dismiss should be DENIED.

## III.     ARGUMENT

### A. Clarification of Pleadings

Defendants' Motion to Dismiss relies upon misleading representations of the Amended Complaint, the first being that Mr. McGahey is claiming "standing to enforce the loan modification

guidelines under HAMP. MTD p. 1. Defendants allege the Plaintiff's lack of standing to enforce HAMP "mandates dismissal of all claims in the Complaint." MTD p. 12.  Mr. McGahey, however, has not claimed he has standing to enforce HAMP under the HAMP guidelines and none of the four (4) Counts alleged by the Plaintiff against Defendants is made pursuant to HAMP or its authorizing legislation, the Emergency Economic Stabilization Act, 12 U.S.C. §§ 5201 *et seq.* Am. Compl. ¶¶ 180-220. Mr. McGahey makes claims against Defendants, supported with sufficient well-pleaded facts, for: violation of UTPA, RESPA, MCCC, and for Fraud only. *Id.* Defendants rely upon the First Circuit's decision in *MacKenzie v. Flagstar Bank, FSB*, which is distinguishable from the instant case. *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486 (1st Cir. 2013). By the time that case had reached the First Circuit, the primary count remaining from the plaintiffs was their breach of contract claim, alleging violation of the implied covenant of good faith and fair dealing. *Id.* at 490. It is that section of the *MacKenzie* opinion Defendants cite in support of dismissing all Counts of the Plaintiff's Amended Complaint. MTD pp. 1, 10-11. The Court in *MacKenzie* dismissed the plaintiff's breach of contract claim, finding that the plaintiffs were not third-party beneficiaries entitled to enforce the HAMP Servicer Participation Agreement (SPA) between the servicer and federal government and the mortgage contract did not require the servicer to review the borrowers for a loan modification prior to foreclosure. *Id.* at 491-494. Mr. McGahey purposefully did not raise any of these claims and the holding in *MacKenzie* does not support dismissal of any of the Counts in the Amended Complaint. *Id.*

Second, Defendants represent that the Plaintiff claims he "was, at some point, *entitled* to a loan modification under the Fannie Mae HAMP and that PHH and Fannie Mae were obligated to offer him one." MTD p. 9 (emphasis in original). Again, the Amended Complaint shows that none of the Counts brought by Mr. McGahey against Defendants asserts such an entitlement or

obligation. Am. Compl. ¶¶ 180-220. The word "entitled" only appears regarding the relief Mr. McGahey requests for each Count raised against Defendants. Am. Compl. ¶¶ 190, 200, 215, 220. Mr. McGahey properly asserts *his eligibility to be evaluated for* a HAMP modification as he did not fail the 2009 HAMP TPP and therefore was not precluded from subsequent evaluation for HAMP. Am. Compl. ¶¶ 23, 42, 47, 51, 82-83, 98, 101, 116, 127-128, 134, 140, 142, 161, 167, 181, 183, Ex. 2-3, 22, 34. Mr. McGahey further asserts that had he been properly evaluated he would have been found eligible and PHH would have had to offer him a Fannie Mae HAMP per the Fannie Mae Guidelines. Am. Compl. ¶¶ 42-51, 82-83, 97-101, 127-128, 134-136, 167, 181, 183, Ex. 7-13, 28-29, 37.  Instead, Defendants continually misrepresented to Mr. McGahey that he was not eligible for a HAMP modification, his non-eligibility for same being a material fact in inducing him into accepting more expensive modifications offered by Defendants, resulting in the Plaintiff paying increased interest, fees, costs, and interest upon interest, fees, and costs, as well as loss of equity, harm to his credit, costs for travel and legal representation for the foreclosure that never should have even been filed, as well as emotional damages. Am. Compl. ¶¶ 216-220.

### B.  Violation of the Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq.* (PHH)[1]

An act or practice is unfair if it: (1) causes, or is likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition. *State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200, 206. An act or practice is deceptive if "it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances.… An act or practice may be deceptive, within the meaning of Maine's UTPA, regardless of a defendant's

---

[1] The Plaintiff intends to file a Motion for Leave to further amend the Amended Complaint, adding Defendant Fannie Mae to Count I: Violation of the Unfair Trade Practices Act 5 M.R.S.A. § 205-A *et seq.* and also adding a recent further denial to review for HAMP.

good faith or lack of intent to deceive." *Id.* at ¶ 17.    As alleged, PHH's continued misrepresentations that Mr. McGahey was not eligible for HAMP, failure to abide by Fannie Mae Guidelines, and failure to evaluate Mr. McGahey for HAMP were unfair and deceptive and served to mislead Mr. McGahey into accepting unaffordable modifications causing him financial harm. Am. Compl. ¶¶ 180-190.

### 1.    Failure to Follow Fannie Mae Guidelines is Unfair and Deceptive

Defendants claim that the Plaintiff is trying to "graft a cause of action to enforce HAMP using the Maine Unfair Trade Practices Act." MTD p. 13. The absence of a private right of action under the Fannie Mae Guidelines, however, does not preclude recovery for the Defendants' unfair and deceptive conduct under UTPA.  *See In re Bank of America Home Affordable Modification*, 2011 WL 2637222 *5 (D. Mass. July 6, 2011)("claims under state consumer protection statutes may proceed even in the absence of a private means of recovery if the alleged violation is unfair or deceptive."); *Blackwood v. Wells Fargo Bank, N.A.*, 2011 WL 1561024, at *3 (D. Mass. Apr. 22, 2011)("Regardless whether there is a private right of action under HAMP, it is not inconsistent with the HAMP program to allow a claim to proceed under Mass. Gen. Laws ch. 93A."); *Bosque v. Wells Fargo Bank NA*, 762 F.Supp.2d 342, 353-354 (D. Mass. Jan. 26, 2011)(Plaintiffs' allegations that defendant made deceptive, false or misleading representations to plaintiffs regarding their eligibility for a permanent loan modification and their rights under HAMP sufficient to state a claim under 93A). The Massachusetts cases are applicable in this matter as M.G.L. ch.93A has been a "prototype" for the Maine UTPA. *See Hoglund ex rel. Johnson v. Diamler Chrysler Corp.*, 102 F. Supp. 2d 30, 31 (D. Me. 2000); *See also Lund v. Smith*, 787 F. Supp. 2d 82, 88 (D. Me. 2011).

As alleged, PHH did violate specific Fannie Mae Guidelines by failing to evaluate Mr. McGahey for HAMP and misrepresenting his eligibility status: such conduct was unfair and deceptive. Am. Compl. ¶¶45, 128, 134-137,181,198; Exhibits 7-13, 28-30. Mr. McGahey was offered a HAMP TPP effective August 1, 2009.  Am. Compl. ¶ 20, Exhibit 1. He made all three payments under the HAMP TPP. Am. Compl. ¶¶ 22-23, Exhibits 1, 2, 22, 34.  PHH admitted in a letter dated July 10, 2015, that Mr. McGahey successfully completed the trial plan. Am. Comp. ¶ 21, Ex. 2. In addition, the payment histories at Exhibits 2, 22, and 24 of the Amended Complaint show the payments made timely and the email at Exhibit 34 to the Amended Complaint confirms that Mr. McGahey made all three payments, and one additional payment, under the TPP. PHH cannot deny that Mr. McGahey made all three payments timely under the TPP. Rather, his financial situation changed from the time that PHH evaluated him for the 2009 HAMP TPP and he does not dispute PHH's determination that he was not eligible for a permanent HAMP modification due to his reduction in income at the time he successfully completed the HAMP TPP. Am. Compl. ¶ 28.

Pursuant to the Fannie Mae Servicing Guidelines in effect during all subsequent time periods that Mr. McGahey applied for a modification in 2012, 2013, 2015 Mr. McGahey remained eligible to be reviewed again for a HAMP modification. The Fannie Mae HAMP Eligibility Criteria specifically identify the circumstances under which a borrower who was evaluated for HAMP but not offered a HAMP modification is entitled to a subsequent HAMP review. Am. Compl. Ex. 9. In addition, the Eligibility Criteria also identifies the only circumstance that precludes a borrower who obtained a HAMP TPP from being reviewed again for HAMP. *Id.* The relevant sections of the Fannie Mae Guidelines below are attached to the Amended Complaint as Exhibit 9. Am. Compl. ¶ 48.

**2012 Guide: Fannie Mae Single Family Servicing Guide March 14, 2012, Part VII Section 609.01 HAMP Eligibility** (Exhibit 9):

A borrower is ineligible for a subsequent HAMP offer if:
- the borrower previously received a HAMP mortgage loan modification and lost good standing; or

- the borrower is considered to have failed the Trial Period Plan because a trial period payment was not received by the servicer by the last day of the month in which it was due.

Neither of the above criteria apply to Mr. McGahey. He never previously received a HAMP modification and he did not "fail" the 2009 HAMP TPP.

The March 2012 Guidelines continue:

A borrower who has been evaluated for HAMP but does not meet the minimum eligibility criteria described in this Guide, or who meets the minimum eligibility criteria but is not qualified for HAMP by virtue of:

- a negative NPV result where the value for the "no modification" scenario exceeds the value for the "modification" scenario by more than $5,000;
- excessive forbearance or failure to make timely forbearance payments; or
- other financial reason;

**may request reconsideration for HAMP at a future time if he or she experiences a change in circumstance.** (emphasis added).

As alleged in the Amended Complaint, Mr. McGahey falls into the category of borrowers who were evaluated for HAMP but found not to be qualified for HAMP due to his reduction in income and may request reconsideration at a future time after a change in circumstances. Am. Compl. ¶¶ 25-26, 28. The succeeding years' guidelines retain these criteria and provide additional guidance to further define the basic HAMP eligibility criteria. Am. Compl. ¶ 128, Ex. 28.

**2014 Guide December 10, 2014: Determining Eligibility for a Fannie Mae HAMP Modification** (Exhibit 28)

In order to be eligible for a Fannie Mae HAMP modification, all of the criteria in the following table must be met:
…
The borrower must not have previously

• failed a Fannie Mae HAMP Trial Period Plan as described in *Offering a Trial Period*

*Plan and Completing a Fannie Mae HAMP Modification*, or

• received a Fannie Mae HAMP modification and lost good standing as described in *Identifying Loss of Good Standing*. . . .

In the following instances, the servicer **must** evaluate a borrower's subsequent request for a Fannie Mae HAMP modification if he or she experienced a change in circumstance:

• The borrower was previously evaluated for a Fannie Mae HAMP modification but did not meet the eligibility criteria described in this Guide.

• The borrower was previously evaluated for a Fannie Mae HAMP modification and met the eligibility criteria but did not qualify for a Fannie Mae HAMP modification by virtue of the following:

– a negative NPV result,
– excessive forbearance, or
– any other financial reason.  (emphasis supplied)
…
### Offering a Trial Period Plan and Completing a Fannie Mae HAMP Modification
If the borrower fails to make a Trial Period Plan payment by the last day of the month in which it is due, the borrower is considered to have failed the Trial Period Plan and the servicer must not grant the borrower a permanent Fannie Mae HAMP modification, unless the servicer determines that acceptable mitigating circumstances caused the payment to be late.
…
### Identifying Loss of Good Standing
If, following a successful Trial Period Plan, a borrower defaults on a HAMP modification (three monthly payments are due and unpaid on the last day of the third month), the mortgage loan is no longer considered to be in "good standing." Once lost, good standing cannot be restored even if the borrower subsequently cures the default.

Most significantly, the Guidelines do **not** state that if the borrower's financial situation changes

during the TPP and he is not eligible for a permanent HAMP then he can never be evaluated for a

HAMP again. Am. Compl. Ex. 28. The Guidelines  state the opposite: "A borrower who has been

evaluated for HAMP but does not meet the minimum eligibility criteria described in this Guide,

or who meets the minimum eligibility criteria but is not qualified for HAMP by virtue of:

• a negative NPV result where the value for the "no modification" scenario exceeds the value for the "modification" scenario by more than $5,000;
• excessive forbearance or failure to make timely forbearance payments; or
• other financial reason;

**may request reconsideration for HAMP at a future time if he or she experiences a change in circumstance.**

This is Mr. McGahey's situation: he was evaluated for HAMP and offered a HAMP TPP in 2009 because he met the minimum eligible criteria to be evaluated but he did not qualify for the permanent HAMP modification because of financial reasons. Am. Compl. ¶¶ 20, 23, 28, Ex. 2, 22. When his circumstances changed in 2012 and he had increased income, he reapplied. Am. Compl. ¶¶ 37-38.  He should have been evaluated for HAMP in 2012 pursuant to the above guidelines but instead, he was denied and PHH did not even conduct the HAMP evaluation. Am. Compl. ¶¶ 41-50, 56, Ex. 7-13. Thus, according to the Guidelines cited above, Mr. McGahey should also have been evaluated for HAMP in connection with his 2013 request for a modification. As shown in the 2014 Guide quoted above, the Guidelines expressly stated PHH's obligation to review Mr. McGahey again for HAMP in connection with his 2015 requests for a loan modification but PHH did not evaluate him for HAMP then, either. Am. Compl. ¶¶ 82-83, 86, 96- 98, 125, 127-128, Ex. 9, 28 ("the servicer **must** evaluate a borrower's subsequent request for a Fannie Mae HAMP modification if he or she experienced a change in circumstance." (emphasis supplied). As alleged in the Amended Complaint, it was unfair and deceptive of PHH to represent to Mr. McGahey that he did not qualify for HAMP and then deny him an evaluation for HAMP when it knew or should have known that he was eligible for same. Am. Compl. ¶¶ 180-190. Such conduct is evidence of this unfair and deceptive practice.

The cases cited by the Defendant are distinguishable. In *Young* the Plaintiff alleged violations of the HAMP guidelines as a 93A violation for failure to provide the Plaintiff with a HAMP modification but the facts revealed that the Plaintiff had actually failed the TPP by not making the payments on time. *Young v. Wells Fargo Bank, N.A.* 109 F.Supp.3d 387, 400 (1st Cir. 2015). Thus the conduct did not violate HAMP or 93A. *Id.* As alleged in the Amended Complaint,

Mr. McGahey successfully completed the TPP and was wrongfully denied subsequent evaluation and eligibility for HAMP. Am. Compl. ¶¶ 22-23, 41-42, 125. In *Markle* the Court dismissed the 93A claim because the Plaintiff simply alleged a violation of HAMP guidelines without citing to specific guidelines and without alleging that such violation was unfair and deceptive. *Markle v. HSBC Mortg. Corp. (USA),* 844 F.Supp.2d 172, 188 (2011).  Here, Mr. McGahey has pled a non-exhaustive list of PHH's unfair and deceptive conduct, including at least six (6) failures to abide by specific Fannie Mae Single Family Servicing Guide requirements and at least eleven (11) additional unfair and deceptive actions committed by PHH against Mr. McGahey. Am. Compl. ¶¶ 41-51, 56, 82-83, 86, 96- 98, 125, 127-128, 181, Ex. 7, 9, 11-13, 28-30, 37. PHH's underlying acts were unfair and deceptive, including its failure to abide by the Fannie Mae Guidelines, and the Plaintiff has stated a claim under UTPA for such conduct.

## 2.  Plaintiff Alleged Substantial Actual Damages

The actual harm as defined by the UTPA is "any loss of money or property, real or personal," 5 M.R.S.A §213(1). The Plaintiff alleges he "suffered substantial actual damages as a result of PHH's conduct...including but not limited to 1) paying increased interest; 2) paying PHH and Fannie Mae's attorneys' fees for the 2012 foreclosure [that never should have been brought]; 3) incurring and paying late fees and costs when he inevitably fell behind; 4) paying interest on the capitalized interest, fees, attorneys' fees and costs at a higher rate; 5) paying for his attorney to prevent the 2012 foreclosure, 6) harm to his credit, 7) gas and mileage; and 8) loss of equity in his property." Am. Compl. ¶¶ 36, 62, 95, 106, 117, 123, 148, 152, 168, 170-171, 186, 189, Ex. 24 Customer Account Activity Statement. Mr. McGahey was first wrongfully denied eligibility for HAMP on September 25, 2012. Am. Compl. ¶¶ 41-42.  If PHH had followed the Fannie Mae Guidelines and evaluated him for HAMP, Mr. McGahey would have been found eligible and PHH

would have had to offer him the modification. Am. Compl. ¶¶ 43-51. Instead, the modification he was given in 2013 included $3,666.63 in "attorney fees/costs" and $2,181.63 in "recoverable advances" (totaling $5,858.26) that accrued after he was denied the HAMP. Am. Compl. ¶¶ 93, 113, Exhibit 21, 25. These amounts never would have been added if he was fully evaluated for HAMP in 2012. Am. Compl. ¶¶ 117-118.  Such funds were added to the principal balance and a part of Mr. McGahey's payments each month went to pay these costs as well as interest on these costs. Am. Compl. ¶¶ 93, 106, 113, 117, 168, Ex. 21-22, 24 (Customer Account Activity Statement ), 25. Per the Customer Account Activity Statement in Exhibits 22 and 24, Mr. McGahey made 25 payments on the 2013 loan modification, each applied to the capitalized principal, interest, and escrow. Am. Compl. ¶ 105, Ex. 21-22, 24. Using the actual payments made by Mr. McGahey, per the terms of the 2013 loan modification and amortizing $5,858.26 at 6.675% for 40 years, Mr. McGahey paid at least $1,014.13 toward these fees, $937.58 of which was additional interest paid. Am. Compl.¶¶ 105, Ex. 21-22, 24. That is a substantial damage paid by Mr. McGahey. The same calculation can be done for the 2015 loan modification resulting in more actual monetary damage to Mr. McGahey.

Defendants' citation to this Court's decision in *Fogg v. Ocwen Loan Servicing, LLC*, 2015 WL 1565229, at *5 (D. Me. Apr. 8, 2015) is inapplicable to the facts of the instant case. As a more recent decision of this Court has stated, "the *Fogg* Court addressed a case where the only loss of money or property was attorney's fees," *Napolitano v. Green Tree Servicing, LLC*, 2016 WL 447451, at *9 (D. Me. Feb. 4, 2016). In *Napolitano*, as in the instant case, the plaintiffs "claimed specific damage to their real and personal property sufficient to come within the protection of the MUTPA." *Id.* Where, as in the instant case, a plaintiff's complaint evidences "several injuries resulting from defendant's allegedly deceptive representations about HAMP, including wrongful

foreclosures, increased fees, costs incurred to avoid foreclosure, loss of opportunities to pursue refinancing or loss mitigation strategies, and emotional distress. Plaintiffs' allegations of injury and causation are sufficient to state a claim under ch. 93A." *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 354 (D. Mass. 2011) (internal citation omitted); Am. Compl. ¶¶ 180-190. As discussed above, 93A provides the same protections, almost word-for-word, as the Maine UTPA. As outlined above, Mr. McGahey paid money he would not have had to pay but for PHH's unfair and deceptive conduct. Am. Compl. ¶¶ 36, 62, 95, 98-107, 113-118, 123, 148, 152-153, 168-171, 180-190, Ex. 22, 24. PHH's unfair and deceptive conduct also resulted in costs to Mr. McGahey including suffering a loss of equity in his home, harm to his credit, and costs for travel and legal representation to prevent the foreclosure that never should have even been filed. *Id.* The Plaintiff has pled substantial damages sufficient to sustain a claim under UTPA.

### 3.   Even Though Not an Element of UTPA, Plaintiff Did Rely to His Detriment on PHH's Misrepresentations

Defendants further allege that Mr. McGahey's count for PHH's violation of the Maine UTPA "fails" because he "cannot allege he relied on a purported misrepresentation by defendants to his detriment." MTD p. 18. Detrimental reliance is not a required element in the Maine UTPA for recovery of damages. 5 M.R.S.A. § 205-A *et seq.* Defendants take the Law Court's analysis in *Tungate* out of context. MTD p. 18. The full sentence is: "**In pricing cases** under the Act the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase." *Tungate v. MacLean-Stevens Studios, Inc.*, 1998 ME 162, ¶ 11, 714 A.2d 792, 797 (emphasis added). The Law Court limited its analysis to a narrow class of cases to which the instant case does not belong. *Id. Tungate* concerns the alleged inducement to purchase varying grades of school photographs with different set prices. *Id.* at 794. In contrast, Mr. McGahey's Amended Complaint alleges numerous instances of unfair and

deceptive conduct, including but not limited to at least six (6) failures to abide by the Fannie Mae Single Family Servicing Guide and at least eleven (11) additional unfair and deceptive actions committed by PHH against Mr. McGahey. Am. Compl. ¶¶ 180-181. Assuming *arguendo* that detrimental reliance did need to be alleged in a Maine UTPA cause of action, Mr. McGahey alleges and sufficiently supports with well-pleaded facts that he relied on the unfair and deceptive conduct of PHH and to his detriment. Am. Compl. ¶¶ 78-90, 102-107, 113-118, 125-134, 150-153, 178-179, Ex. 17-20, 22, 25-28. Mr. McGahey has sufficiently supported his allegations in Count I of the Amended Complaint with well-pleaded facts. The Plaintiff's Count for UTPA violations should therefore survive Defendants' Motion to Dismiss.

### C.  Count II: Violation of RESPA, 12 U.S.C. § 2605 *et seq.* (PHH)

Defendants again allege that Mr. McGahey is attempting to "graft a private right of action onto the HAMP program where there is none." MTD p. 19. Nowhere in Count II, for violation of RESPA, 12 U.S.C. § 2605 *et seq.,* do the Plaintiff's claims depend on Defendants' HAMP violations; instead, the Plaintiff's allegations, sufficiently supported by well-pleaded facts, are for violations of specific sections of RESPA, the harm suffered by Mr. McGahey as a result, and the damages he is owed for same. Am. Compl. ¶¶ 191-200. Multiple district courts have permitted actions for RESPA violations against mortgage loan servicers wherein the Qualified Written Requests (hereinafter referred to as "QWR") and/or Notices of Error (hereinafter referred to as "NOE") were sent in relation to HAMP. *See, e.g., Moore v. Mortgage Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 123 (D.N.H. 2012); *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 807 (E.D. Pa. 2014); *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 883–85 (E.D. Ky. 2015); *Collins v. BAC Home Loans*, 2013 WL 2249123, at *6 (N.D. Ala. May 21, 2013); *Srok v. Bank of Am.*, 2015 WL 6828078, at *10 (E.D. Wis. Nov. 6, 2015). Notably, the cases that Defendants cite

to for support of their argument that QWRs and NOEs relating to HAMP "did not trigger a duty to respond under RESPA" were all decided prior to 2014, when 12 C.F.R. § 1024, Regulation X, became effective. MTD p. 21, n. 6. Regulation X "is issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. 2601 et. seq." 12 C.F.R. § 1024.1. Regulation X requires that within thirty (30) days of a receiving a QWR, a mortgage loan servicer must respond by either:

> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

Regulation X also requires that within thirty (30) days of receiving a NOE, a mortgage loan servicer must respond by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

As alleged, Mr. McGahey sent multiple QWRs/NOEs to PHH that were not timely responded to in ways permissible pursuant to Regulation X. Am. Compl. ¶¶ 111-112, 138-140, 156-160, 191-200, Ex. 2-3, 22-24, 31, 35-36. On August 28, 2013, Mr. McGahey sent a QWR to

PHH requesting information regarding any modifications made to his loan yet PHH responded to that letter with a letter dated September 10, 2013, which did not provide information regarding the 2010 loan modification. Am. Compl. ¶¶ 111-112, Ex. 23-24. On June 12, 2015, Mr. McGahey delivered to PHH a QWR and an NOE regarding wrongful denial of HAMP, explaining that he had never been offered a permanent HAMP modification, submitting a similar complaint to the Consumer Financial Protection Bureau ("CFPB") the same day. Am. Compl. ¶¶ 138-139, Ex. 31. PHH responded to the CFPB complaint, but not the Plaintiff's NOE, in a letter dated July 10, 2015; in said letter, PHH admitted that Mr. McGahey successfully completed his 2009 HAMP TPP and also misrepresenting that Mr. McGahey was offered a HAMP modification agreement. PHH failed to correct the errors alleged by Mr. McGahey in the June 12, 2015, QWR/NOE regarding the wrongful denials of HAMP modifications in 2012/13 and 2015/16. Am. Compl. ¶ 140, 194, Ex. 2. On October 30, 2015, Mr. McGahey sent a QWR to PHH requesting information on his loan, and in particular the 2009 TPP and modification. PHH sent a response letter dated December 1, 2015, stating that the Plaintiff successfully completed the 2009 TPP but was offered a standard, non-HAMP modification due to his decrease in income; PHH did not address or correct the wrongful HAMP denials in either 2012 or 2015. Am. Compl. ¶¶ 156-158, Ex. 22, 35. Mr. McGahey, through counsel, sent another QWR and NOE to PHH on January 27, 2016. PHH responded with a letter dated March 7, 2016, stating that the 2009 modification was a standard, non-HAMP modification, but failing to address or correct the subsequent wrongful HAMP denials. Am. Compl. ¶¶ 159-161, Ex. 3, 36.

Defendants allege that the multiple QWRs did not qualify as such under RESPA's definition. MTD p. 20. The requirements for a QWR are that it be written correspondence, that it include or otherwise enable the servicer to identify the name and account of the borrower, and that

it include the reason(s) why the borrower believes his account is in error or provides sufficient details as to other information sought. 12 U.S.C. § 2605(a)(1)(B). Mr. McGahey alleges that each of his QWRs satisfied the requirements pursuant to RESPA. Am. Compl. ¶ 192, Ex. 23, 31, 35-36. Regulation X further provides that a mortgage loan servicer such as PHH "shall comply with the requirements of this section for **any written request for information** from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a) (emphasis added). The requirements with respect to responding to QWRs are much broader since Regulation X became effective in 2014. Defendants fail to address these broader requirements in their Motion to Dismiss, relying on out-of-date definitions. MTD pp. 20-22. PHH failed to timely respond to QWRs/NOEs in a manner permissible under Regulation X. Defendants cannot and do not allege that Regulation X does not mandate PHH's obligations upon receipt of the Plaintiff's QWRs/NOEs.

Mr. McGahey alleges at least six (6) RESPA violations by PHH: 1) PHH failed to provide information requested in the August 28, 2013, QWR, particularly related to the previous modifications; 2) PHH failed to correct errors alleged in the June 12, 2015, QWR/NOE regarding the wrongful denial of a HAMP modification in 2012/2013; 3) PHH failed to correct errors alleged in the June 12, 2015, QWR/NOE regarding the wrongful denial of a HAMP modification in 2015/2016; 4) PHH failed to provide information requested in the January 27, 2016, QWR/NOE on the modified loan and calculations of the principal on the loan account; 5) PHH failed to properly investigate and correct the errors alleged in the January 27, 2016, QWR/NOE regarding the wrongful denial of a HAMP modification in 2012/2013; and 6) PHH failed to properly investigate and correct the errors alleged in the January 27, 2016, QWR/NOE regarding the

wrongful denial of a HAMP modification in 2015/2016. Am. Compl. ¶¶ 193-194, 196. This constitutes a pattern and practice of RESPA violations. *See Tanner v. Nationstar Mortg., LLC,* 2016 WL 3193715 *2 (Me. Super. Ct. May 3, 2016) (concluding that three examples of RESPA violations in other cases were sufficient to support a claim of pattern and practice of noncompliance); *Ploog v. HomeSide Lending, Inc.,* 209 F. Supp. 2d 863, 868 (N.D. Ill. 2002); *In re Maxwell,* 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (both concluding that five violations was sufficient to establish pattern and practice under RESPA).

Defendants claim that the Plaintiff did not link damages to PHH's RESPA violations. MTD p. 26. PHH's failures to properly respond to each QWR/NOE from the Plaintiff is discussed in detail above. As a result of these violations, PHH never properly resolved the error and continued to wrongfully deny Mr. McGahey review and eligibility for HAMP.  Mr. McGahey alleges specific damages directly resulting from PHH's RESPA violations including the attorneys' fees "to help fix the error" and "inflated monthly interest, fees, and costs" actually paid by Mr. McGahey as outlined above.  Am. Compl. ¶ 198. Attorneys' fees incurred as a result of PHH's failure to respond or resolve the problem do constitute actual damages under RESPA. See *Tanner*, 2016 WL 3193715 *3; *Miranda v. Ocwen Loan Servicing, LLC,* 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015); *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014). Further, Mr. McGahey alleges numerous actual damages, as discussed above, which occurred as a result of PHH's failure to resolve the error. Am. Compl. ¶¶ 36, 62, 95, 106, 117, 123, 148, 152, 168, 170-171, 186, 189, Ex. 22, 24. Such actual damages would not have been incurred but for PHH's violations of RESPA and Regulation X. Am. Compl. ¶ 198, Ex. 7-13, 28-30, 37. Mr. McGahey has sufficiently supported his allegations in Count II with well-pleaded facts. The Plaintiff's Count for violations of RESPA should therefore survive Defendants' Motion to Dismiss.

**D. Count III: Fraud (PHH and Fannie Mae)**

"'[A] defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to [her] damage.... Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to [her].'" *Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209, 217 (internal citation omitted) (modifications in original). Mr. McGahey's allegations satisfy each of these elements. Am. Compl. ¶¶ 201-215, Ex. 22, 34. Defendants allege that "[t]he only alleged false or misrepresented statement in this case is that Plaintiff did not qualify for HAMP." MTD p. 29. The paragraph Defendants cite to says "PHH and Fannie Mae made false statements about material facts **when they represented that Mr. McGahey was not eligible for HAMP based on a prior HAMP failure**..." Am. Compl. ¶ 203 (emphasis added). There are also additional allegations of false or misrepresented statements from Defendants. Am. Compl. ¶¶ 70, 87, 102, 115, 125, 131, 142, 150, 155, Ex. 2, 26, 34. Defendants admitted that Mr. McGahey successfully completed a TPP in 2009, but was given Standard, non-HAMP modifications. Am. Compl. ¶¶ 23, 92-93, 144-145 Ex. 1-2, 21, 33. Defendants' fraud induced Mr. McGahey to accept and pay into more expensive loan modifications, thus paying fees, interest, and costs well above and beyond his original obligation, and also induced him to refrain from further pursuing HAMP, justifiably relying upon Defendants' false representations that he was not eligible for HAMP to his detriment. Am. Compl. ¶¶ 87, 98-107, 113-118, 131, 150-153, 185, 208-210, Ex. 22. Defendants allege again that "Plaintiff assumes that he had a right to a HAMP modification..." MTD p. 29. Nowhere in Count III is this assumption made or even implied. Am. Compl. ¶¶ 201-215. Mr. McGahey alleges and sufficiently supports

with well-pleaded facts his eligibility to be evaluated for, if not offered, a HAMP modification. Am. Compl. ¶¶ 42, 47-48, 51, 82-83, 98, 101, 116, 127-128, 134, 167, 181, 183, Ex. 7-13, 28-30, 37. Mr. McGahey suffered emotionally and financially as a result of Defendants' fraud, including "paying interest, fees, and costs he otherwise would not have owed." Am. Compl. ¶ 210. Mr. McGahey sufficiently supported his allegations in Count III with well-pleaded facts, establishing the presence of all required elements for a fraud claim under Maine law. The Plaintiff's Count for fraud should therefore survive Defendants' Motion to Dismiss.

### E.   Count IV: Violation of 9-A M.R.S. § 9-401 Misrepresentation (PHH and Fannie Mae)

Plaintiff's Amended Complaint sufficiently supports a claim for PHH's and Fannie Mae's violation of 9-A M.R.S. § 9-401. The case law cited to by Defendants does not address that State statute, but rather claims of fraudulent misrepresentation. *See Maine Eye Care Associates P.A. v. Gorman*, 2006 ME 15, ¶ 16, 890 A.2d 707, 711; *Arbour v. Hazelton*, 534 A.2d 1303, 1306 (Me. 1987). 9-A M.R.S. § 9-401 provides that:

> A creditor or a person acting for him may not induce a consumer to enter into a consumer credit transaction by misrepresentation of a material fact with respect to the terms and conditions of the extension of credit. A consumer so induced may rescind the sale, lease or loan or recover actual damages, or both.

As outlined in detail above, Defendants misrepresented to Mr. McGahey multiple times that he was not eligible for a HAMP modification, his eligibility for same being a material fact in inducing him into accepting more expensive modifications offered by Defendants, resulting in the Plaintiff paying increased interest, fees, costs, and interest upon interest, fees, and costs, as well as loss of equity, harm to his credit, costs for travel and legal representation for the foreclosure that never should have even been filed, as well as emotional damages. Am. Compl. ¶¶ 216-220. The Plaintiff's Count for Violation of 9-A M.R.S. § 9-401 should therefore survive Defendants' Motion to Dismiss.

## IV.    CONCLUSION

For the reasons outlined above, the Plaintiff requests that the Court DENY Defendants' Motion to Dismiss with regard to all Counts in the Amended Complaint and grant such other and further relief as the Court deems just and proper. If the Court grants any part of Defendants' Motion to Dismiss, the Plaintiff seeks leave to amend to address any deficiencies in the pleadings. Dated at Biddeford, Maine, this 22nd day of September, 2016.

**Walter McGahey**

By and through his attorneys:

*/s/Andrea Bopp Stark*
Andrea Bopp Stark, Esq.
Counsel for the Plaintiff
Molleur Law Office
419 Alfred Street
Biddeford, Maine 04005
Andrea@molleurlaw.com
(207) 283-3777

Gary Goldberg, Esq.
482 Congress Street, Suite 402
Portland, ME 04101-3424
(207) 899-4644
ggoldberg@garmeylaw.com

## CERTIFICATE OF SERVICE

I, Martine Morin Boissonneault, hereby certify that I am over eighteen years old and that I filed the Plaintiff's Objection to Defendants' Renewed Motion to Dismiss and Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned matter.

Dated: September 22, 2016.

By: _/s/ Martine Morin Boissonneault_
Martine Morin Boissonneault,
MOLLEUR LAW OFFICE
419 Alfred St.
Biddeford, ME 04005
207-283-3777
martine@molleurlaw.com